ANDRÉS S. and MANUEL MELÉNDEZ MARTÍNEZ, Plaintiffs and Appellees, *v.* JIMÉNEZ REALTY, INC., Defendant and Appellant, RAFAELA GONZÁLEZ MELÉNDEZ ET AL., Third-Party Defendants and Appellees.

No. R-68-320. Decided March 25, 1970.

*Ramírez Segal & Látimer* for appellant. *Rafael G. Vidal Roig* for appellees.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

A contract by which "plaintiffs would segregate part of their respective properties . . . and after said segregations

were approved by the Puerto Rico Planning Board, they would sell the segregated parcels to defendant, which binds itself to buy them," is it void in the light of the decision in *Soto v. Feliciano*, 80 P.R.R. 595 (1958)?

Before considering the question raised it is necessary to set forth what occurred in the present suit.

Doctors Andrés S. and Manuel Meléndez Martínez signed, on February 14, 1964, a contract with Jiménez Realty, Inc. The document states "that the appearing parties, Manuel Meléndez Martínez and Andrés S. Meléndez Martínez, and their respective wives, also appearing parties, have agreed to sell to Jiménez Realty, Inc., certain parcels of land which shall be segregated from their respective properties described in detail in the draft of the deed attached to this contract and marked as Exhibits 'A' and 'B', respectively" and "that since the permit of the Planning Board to make the necessary segregations to effectuate said sale has not been obtained yet, the same cannot be consummated yet," and "the parties agree that the corresponding Segregation, Sale, and Mortgage deeds shall be executed in the course of the following fifteen (15) days as of the date when both segregations are approved."

On April 27, 1966, doctors Meléndez filed a complaint against Jiménez Realty, Inc., in which they alleged "that the Puerto Rico Planning Board denied the segregation permit applied for by plaintiffs, for which reason it is not possible to effectuate the sales agreed upon by the parties in the aforementioned contract. That this being a contract subject to the suspensive condition of the approval of the segregations by the Puerto Rico Planning Board, and, since the same were not approved, it is proper to invalidate the obligations agreed upon by the parties and that the things be returned to their condition before executing such obligations, plaintiff offering to return to defendant the amounts deposited by the latter," and praying that "the rescission of the aforementioned con-

tract invalidating the obligations contracted by the parties" be decreed "returning to defendant the amounts deposited and in the possession of plaintiffs . . . ."

Defendants answered the complaint alleging "that plaintiffs have not taken the necessary steps to obtain the corresponding segregation permits which they bound themselves to take under the contract and that for that reason it has not been possible yet to consummate the sale." It filed counterclaim to recover damages which the delay in obtaining the permit of the Planning Board had caused to it. They also filed a third-party complaint against the wives of the two plaintiffs "because the two aforementioned real properties were community properties, the appearance of plaintiffs' wives is indispensable to effectuate said conveyance and likewise it is indispensable that said wives be brought as parties to the suit in order that the judgment ordering specific compliance, which in due time this Court may enter, shall be valid. At the present time they are not parties to the suit."

In the answer to the third-party complaint filed on June 6, 1967, it was alleged as affirmative defenses that "the contract whose rescission is requested is not susceptible of compliance according to the same. Counter defendants and third-party defendants have complied with each and every one of their obligations in the aforementioned agreement. The defendant and third-party plaintiff failed to comply with its part in the aforementioned contract in failing to cooperate in any manner whatsoever."

Both parties requested information by serving interrogatories, plaintiffs filing their answer on February 23, 1968. On the following March 8, the hearing of the case was set for October 22, 1968.

On April 25, 1968, plaintiffs filed "Motion for Summary Judgment on the Pleadings." They alleged therein:

"1. That the contract object of the present action which appears in the record of this case as Exhibit 'A' is absolutely

void since it was entered into and executed in violation of § 24 of the Puerto Rico Planning and Budget Act, 23 L.P.R.A. § 25, Paragraph 2.

"2. Said contract is absolutely void inasmuch as its object was illegal since it involved two parcels of land of which plaintiffs, that is, the promisors or vendors could not dispose of on the date on which the agreement was entered into because they were part of some properties of larger area and their segregations had not been previously authorized by the Puerto Rico Planning Board . . . .

. . . . . . . .

"6. That this Court, by express provision of § 1257 of the Civil Code, should render judgment, either on the pleadings (Rule 10.3 of the Rules of Civil Procedure) or summarily (Rule 36 *et seq.* of the Rules of Civil Procedure), decreeing the dismissal of the counterclaim and of the third-party complaint, and, consequently, the nullity and inexistence of the contract object of the present suit.

"7. Each and every one of the pleadings appearing in the record of this case and from whose reading and weighing there arises the necessary and indispensable facts for the determination of the present motion are attached and incorporated to this motion."

Defendants opposed plaintiffs' claim alleging:

"That there is nothing illegal in the object of the obligations established in the contract in question nor do said obligations imply any violation of the public policy which prompted the approval of § 24 of the Puerto Rico Planning and Budget Act.

"That the contract does not in any manner whatsoever contemplate carrying out a sale without the previous permit of the Planning Board and on the contrary it imposes on plaintiffs and the third-party defendants the obligation of procuring the corresponding permit before executing the sale.

"That although a sale which implies a segregation without obtaining the corresponding permit of the Planning Board would be void pursuant to the decision in *Soto* v. *Feliciano*, 80 P.R.R. 595, the promise of sale in this case is subject to obtaining such permit and does not, in any manner whatsoever, violate the Planning Act."

Finally it alleged "that although plaintiffs and third-party defendants had obstructed the obtaining of the corresponding segregation permit from the Planning Board, said permit has been obtained by action of defendant and copy thereof is attached to this opposition as Exhibit A, and now there is nothing to preclude that said sale be effectuated."

The question having been submitted to the consideration of the trial court, the latter determined that "a careful analysis of the [contract executed] necessarily leads us to classify it as a perfect sale, pending its consummation . . ." and since the permit of the Planning Board was not obtained previously as required by § 24 of the Planning Act,[1] it held that the contract entered into was void, and granted the summary judgment.

In *Soto* v. *Feliciano, supra,* we held that the sale of a parcel of land segregated from a property of a larger area is void if the Planning Board has not previously approved the subdivision.

Is the conclusion that the contract object of this suit is one of a perfect sale, correct? It is proper to consider the clauses and conditions of the contract. It was stated in the document that brothers Meléndez had "agreed to sell to Jiménez Realty, Inc., certain parcels of land which shall be segregated from their respective properties . . ." and "that since the permit of the Planning Board to make the necessary segregations and to effectuate said sale has not been obtained yet, the same cannot be consummated yet." And "that the corresponding segregation, sale, and mortgage deeds shall be executed in the course of the following fifteen days, as of the date when both segregations are approved."

---

[1] It provides:

"The execution of any public deed or any private contract regarding subdivision shall be ineffectual if such subdivision has not previously been submitted for the consideration of the Puerto Rico Planning Board and been approved by the said Board, except in cases in which the Subdivision Regulations permit such subdivision."

 Evidently the agreement is not a perfect sale. It is not a perfect sale because it lacks the real element necessary to perfect the contract, when such thing fails to constitute the lawful object of the contract. See *Emanuelli* v. *Cadierno*, 50 P.R.R. 128 (1936) and *Commonwealth* v. *De la Torre*, 87 P.R.R. 762 (1963). It is subject to a suspensive condition,[2] the approval of the segregations by the Planning Board. If the latter fails to approve them, the contract fails to exist at law. It is a contract of sale with a suspensive condition. As stated by Puig Brutau in I-II *Fundamentos de Derecho Civil* 127 (1959 ed.), "in this phase the obligation is contracted and, therefore, the parties are bound thereby; but they must wait. until the uncertainty disappears. and it is known whether the effective consideration shall be performed or whether the debtor would be relieved from the obligation. Therefore, although the parties are bound thereby, it is not known whether, definitively, the obligation shall be effective. . . ." And as it is stated by Manresa in VIII-1 *Comentarios al Código Civil Español* 367 (6th ed.), "If the suspensive condition is complied with, the obligation appears. . . . If . . . it is not performed, the bond of law does not appear. . . ."

 Until the Planning Board approves the segregations, the obligation contracted by the vendors is not effective, the bond of law has not arisen. A perfect contract of sale does not exist yet. "As long as the suspensive obligation is pending it may be said that the obligation does not exist." 7 Planiol and Ripert, *Tratado Práctico de Derecho Civil Francés* 343, § 1030. It is conditioned to the approval of the subdivision by the Planning Board.

 A contract like the one we are considering herein does not violate the provision of § 24 of the Planning Act. On the contrary, the parties have borne in mind its provisions

---

[2] It was thus classified by the vendors themselves in paragraph 4 of their complaint.

and they condition the agreement to the compliance with the same. See *Mercedes Bus Line* v. *Rojas,* 70 P.R.R. 513, 517 (1949); *Valcourt Questell* v. *Superior Court,* 89 P.R.R. 809 (1964); *C. Brewer P.R., Inc.* v. *Vega Otero, Inc.,* 92 P.R.R. 429 (1965).

*Commonwealth* v. *De la Torre, supra,* considered and resolved a question different from the one raised in the present case. There we classified the contract as "unilateral promise to sell," since the contract clause provided "Should the owner decide to sell the said parcel 'G', she shall give preference to the Authority to acquire the same for the price of One Dollar and Sixty-five Cents ($1.65) per square meter." This agreement is different from the one we are considering herein. It was a promise to sell a specific part of a property without having obtained the corresponding permit of the Board for the subdivision. The decision in *Soto* v. *Feliciano, supra,* was applicable therein.

In *Fernández Vidal* v. *Morales Isaac,* Civil No. 65-76 of the Superior Court, San Juan Part, review denied in R-67-130, a question similar to the one at bar was raised. In deciding it Judge Moreda stated the following:

"Section 24 of the Planning Act renders ineffective the subdivision if the latter has not been previously approved by the Planning Board. But the subdivision subject to a suspensive condition actually does not have any effect whatsoever until the condition is complied with. Pending condition it is, in a certain sense, inexistent. In this case in particular, the condition is precisely the approval by the Planning Board of the subdivision agreed upon. Upon performance of the condition there ceases to exist any obstacle whatsoever for the free bargaining and the agreement is perfected pursuant to the applicable law.

"In our opinion a different interpretation . . . would unduly obstruct the free bargaining and would present a serious obstacle to an important line of our economy: to the real estate business. We believe that a subdivision subject to the suspensive condition that the same be approved by the Planning Board is not contrary to the morale or to public order. It is also in harmony with the

spirit of the law and it does not endanger the harmonious development of planning and zonification in Puerto Rico."

In view of the foregoing it is proper to reverse the summary judgment rendered by the trial court and to remand the case for the holding of the trial.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Blanco Lugo concurs in the result.